## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TYRONE COOK,** | : |
| **Plaintiff,** | : |
| | : **Civil Action** |
| **v.** | : |
| | : **No. 11-cv-1576** |
| **CITY OF PHILADELPHIA,** | : |
| **COMMISIONER CHARLES RAMSEY,** | : |
| **JOHN JACK GAITTENS, and KEVIN** | : |
| **BETHAL** | : |
| **Defendants.** | : |

### ORDER

     **AND NOW**, this _____ day of _____, 2011, upon consideration of defendants

City of Philadelphia, Charles Ramsey, John Gaittens and Kevin Bethel's MOTION FOR

SUMMARY JUDGMENT, and Plaintiff's response, it is ORDERED that JUDGMENT IS

GRANTED in favor of all Defendants.

                                            BY THE COURT:

                                          _____

                                                   J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TYRONE COOK, | : | |
| Plaintiff, | : | |
| | : | Civil Action |
| v. | : | |
| | : | No. 11-cv-1576 |
| CITY OF PHILADELPHIA, | : | |
| COMMISIONER CHARLES RAMSEY, | : | |
| JOHN JACK GAITTENS, and KEVIN | : | |
| BETHAL | : | |
| Defendants. | : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants' City of Philadelphia, Charles Ramsey, John Gaittens and Kevin Bethal by

their undersigned attorney, move for an order granting judgment in their favor and against

Plaintiff on this complaint, according to Rule 56(c) of the Federal Rules of Civil Procedure.

Defendants respectfully submit that such relief is warranted for the reasons set forth in the

accompanying memorandum of law.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT

SHELLEY R. SMITH, City Solicitor

ELIZABETH MATTIONI, Chair, Litigation Group
SUZANNE REILLY, Chief Deputy City Solicitor

*/s/ Tracy Tripp*
Tracy Tripp, Assistant City Solicitor
Labor & Employment Unit
1515 Arch Street, 16th Floor
Date: November 30, 2011          Philadelphia, PA 19102-1595

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TYRONE COOK, | : | |
| Plaintiff, | : | |
| | : | Civil Action |
| v. | : | |
| | : | No. 11-cv-1576 |
| CITY OF PHILADELPHIA, | : | |
| COMMISIONER CHARLES RAMSEY, | : | |
| JOHN JACK GAITTENS, and KEVIN | : | |
| BETHAL | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiff, Tyrone Cook, former sergeant in the City of Philadelphia Police Department, alleges that the defendants, the City of Philadelphia, Police Commissioner Charles H. Ramsey, and Deputy Commissioners John Gaittens and Kevin Bethel, violated his First Amendment rights under 42 U.S.C. § 1983.  Specifically, Plaintiff alleges that defendants unlawfully retaliated against him for: 1) filing a race discrimination lawsuit against the City of Philadelphia ("City"), Commissioner Ramsey ("Commissioner") and Deputy Commissioner Gaittens in 2009; and 2) allegedly reporting police corruption to various internal and external sources in 2010.  The alleged retaliation consists of the denial of Plaintiff's request for restricted duty; the cancellation of a scheduled disciplinary hearing; and Plaintiff's thirty-day suspension and eventual termination in October 2010.

Plaintiff fails to carry his burden of proof and cannot establish any element of a *prima facie* case of unlawful First Amendment retaliation.  His complaints of police misconduct fall within the scope of his duties as a police officer, and are therefore outside the protections of the First Amendment.  Even if those complaints qualified as protected activity, he cannot establish the necessary causal relationship between those activities and his termination, just as he cannot establish a causal relationship between his termination and the filing of his 2009 lawsuit.  There is no unusually suggestive temporal proximity between his termination – or indeed any of his

alleged adverse actions – and the alleged protected activities.  There is no evidence whatsoever of any intervening pattern of antagonism or animosity on the part of the Department, or the individual Defendants, directed towards the Plaintiff.  Finally, the evidence as a whole amply supports the Commissioner's decision to terminate Plaintiff, without providing any indications that the length of time taken to reach that decision was at all untoward, or in any way the product of animus from any member of the Police Department.  Plaintiff, in response to Defendants' request for evidentiary support of the allegations, provided nothing more than a list of Plaintiff's supervisors and a reiteration of the bare bones allegations in the Complaint.  Exhibit 28  at #10.  This scintilla of evidence and mere allegations do not provide evidence sufficient to convince a reasonable factfinder to find any of the elements of a *prima facie* case of retaliation, let alone all of those elements, as is required to withstand a motion for summary judgment. *Lauren W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. Pa. 2007).  Accordingly, Plaintiff's case should be dismissed with prejudice, and summary judgment granted in favor of all Defendants.

## II.  DEFENDANTS' STATEMENT OF FACTS

### A.  **The Parties**

1.  Plaintiff, Tyrone Cook, is a resident of Philadelphia.  Complaint at ¶ 9, Exhibit 1.

2.  The City of Philadelphia is a municipality of the first class. 53 P.S. § 101, Exhibit 2. The Police Department is a department of the City.  Philadelphia Home Rule Charter, ch. 3, § 3-100, Exhibit 3.

3.  Charles H. Ramsey is the current Commissioner of the Police Department, and was Plaintiff's supervisor at times relevant to this complaint.  Answer at ¶ 11, Exhibit 4.

4.  John Gaittens is the current Deputy Commissioner for Organizational Support Services and was Plaintiff's supervisor at times relevant to this complaint.  Exhibit 4 at ¶ 12.

5.  Kevin Bethel is the current Deputy Commissioner of Regional Operations, Command South, and was Plaintiff's supervisor at times relevant to this complaint.  Exhibit 4 at ¶ 13.

### B.  **Plaintiff's Employment with the Police Department**

6.  Plaintiff was hired as a police officer recruit by the City in September 1983.  Exhibit 1 at ¶ 14.

7.  Plaintiff was promoted to the rank of sergeant in December 1999.  Exhibit 1 at ¶ 15.

8.  On September 29, 2004, IMPACT, a unit within the Internal Affairs Division (IAD) received an anonymous letter stating that the Plaintiff was receiving overtime for hours he was

not actually working.  Internal Investigation, IAD # 04-1524, Part A: Memorandum to the Commissioner at D1656, Exhibit 5.

9.   IAD finalized its investigation into Plaintiff's alleged theft of overtime, consistent tardiness and false time-keeping entries on March 14, 2007.  Exhibit 5 at D1652.  Over the course of the investigation, IAD conducted video surveillance of then-Sgt. Cook for a number of weeks, conducted 29 separate interviews of 20 different witnesses, including Plaintiff, and reviewed almost a year and half's worth of daily attendance records (DARs) for the entire Northwest Detectives Division, Plaintiff's assignment at the time.  Exhibit 5, Index, at D1653-1655.

10. IAD sustained all the allegations, and recommended Plaintiff's case be referred to the Police Board of Inquiry (PBI) for potential disciplinary action.  Exhibit 5, Conclusion, at D1664.

11. On March 19, 2007, Plaintiff was served with disciplinary charges stemming from IAD investigation #04-1524.  Plaintiff pled not guilty and requested a PBI hearing.  Statement of Charges and Action Taken, Exhibit 6.

12. In September 2007, Plaintiff was arrested and charged with drunk driving (DUI).  Deposition of Tyrone Cook, 9/28/2011, at 10, Exhibit 7.

13. On September 20, 2007, by direct order of the Police Commissioner, then Sylvester Johnson, Plaintiff was issued a 30-day suspension with intent to dismiss because of his DUI arrest.  Internal Investigation IAD # 07-1120, Memorandum to Police Commissioner November 16, 2007 at D1710, Exhibit 8.

14. Plaintiff's pending disciplinary charges from IAD Investigation # 04-5124, regarding Plaintiff's theft of overtime, tardiness, and falsification of DARs were indefinitely postponed due to his intervening termination for DUI.  The Department's human resources manager issued a memo to the PBI and Plaintiff's personnel file noting that the postponed charges would be pursued should Plaintiff ever be reinstated.  Memorandum to File from Wendy Milewski, Departmental Human Resources Manager III, October 11, 2007, Exhibit 9.

15. Addressing each investigation or set of charges individually, as well as placing pending charges into a file to be completed if an officer is reinstated, is standard procedure for the Department.  Deposition of Deputy Commissioner John Gaittens at 73-74, Exhibit 10.

16. Plaintiff filed a grievance challenging his termination and was awarded reinstatement by an arbitrator on August 15, 2009.  Exhibit 1 at ¶17.

17. Plaintiff's actual reinstatement became effective September 17, 2009.  Report of Appointment, September 17, 2009, Exhibit 11.

18. On October 2, 2009, Plaintiff was placed on "restricted duty."  Memorandum to Police Commissioner from Tyrone Cook, July 14, 2010, Exhibit 12.  Plaintiff was assigned during this time to the Differential Police Response Unit (DPR).  Exhibit 7 at 14.

19. "Restricted duty" allows an employee with a non-duty related medical issue to work in a sedentary position during his/her period of recovery and still receive full-time wages and benefits while not using any accrued leave time.  Restricted duty is a benefit offered by the Police Department which falls outside any labor contracts or the Civil Service Regulations.  There is no written policy regarding restricted duty.  Affidavit of Carol Madden, Occupational Safety Administrator, Police Department, Exhibit 13.

20. Employees may initially request six months of restricted duty.  This request must be approved by the Police Safety Office.  Exhibit 13.

21. Employees may also request extensions of restricted duty.  These extensions are completely discretionary, and ultimately the decision of the Commissioner.  Extensions are generally granted in three-month increments, and it is unusual for more than two extensions of restricted duty to be granted.  See Exhibit 13.

22. An employee requesting an extension of restricted duty must submit medical documentation from his or her doctor regarding the need for an extension, and then the request proceeds through the requesting officer's chain-of-command, with each supervisor in the chain recommending that the request be granted or denied.  Exhibit 13.

23. Ultimately, the Commissioner decides which extensions are granted and which are denied.  Extensions are not granted automatically, even with proper documentation.  Exhibit 13.

24. On October 10, 2009, Plaintiff filed a lawsuit in federal court, alleging that his arrest and termination for DUI was the result of racial discrimination by the City, former Commissioner Johnson, Commissioner Ramsey, Deputy Commissioner Gaittens, and Sgt. John Crandley. Exhibit 1 at ¶ 18.

25. In or around April 2010, Plaintiff spoke with Captain Laurence Nodiff, head of South Detectives Division ("SDD").  Exhibit 1 at ¶20.  Plaintiff informed the Captain that Plaintiff believed that Sharief Durbin, Plaintiff's nephew, has been erroneously arrested for a shooting,

and that the detectives assigned to the case were not investigating the crime properly. Exhibit 7 at 17 - 19.

26. On or around June 14, 2010, Plaintiff engaged in a heated argument with Assistant District Attorney Noel DeSantis, the attorney prosecuting his nephew, in the courthouse at 1801 Vine Street, just before a hearing for that case.  Exhibit 7 at 33 - 34.  He admits to screaming at her.  See Plaintiff's Produced Report of Corruption, Exhibit 14.

27. On June 17, 2010,[1] Plaintiff went to IAD with his nephew's mother, Lanetta Durbin. Exhibit 7 at 20.  Plaintiff spoke with Inspector Jerrold Bates and relayed his concerns about his nephew's arrest while his sister-in-law, Ms. Durbin, filled out a complaint.  Exhibit 7 at 20.  See also IAD Investigation # 10-284, Memorandum to Police Commissioner, October 28, 2010, Exhibit 15.

28. Plaintiff himself did not file an IAD complaint against any of the detectives.  Affidavit of Inspector Jerrold Bates at ¶ 18, Exhibit 16.

29. On June 29, 2010, IAD was notified by Deputy Commissioner Kevin Bethel of a complaint filed by Assistant District Attorney Noel DeSantis against Plaintiff.  IAD opened investigation IAD # 10-1086 on June 30, 2010 to review the allegations against Plaintiff.  See Internal Investigation # 10-1086, Part A: Memorandum to the Commissioner at D1384, Exhibit 17.

30. On July 1, 2010, Plaintiff was served with a Notice of Removal from Street Duty due to IAD Investigation # 10-1086.  Plaintiff continued to be assigned to DPR.  Internal Affairs Notice of Removal from Street Duty, Exhibit 18.

31. On or about July 16, 2010, Plaintiff was scheduled for a PBI hearing.  Exhibit 1 at ¶ 23.

32. This hearing was for disciplinary charges stemming from the 2004 IAD investigation, # 04-1524, which dealt with Plaintiff's theft of overtime and tardiness.  Notes of Testimony from Arbitration No. 1918-10, September 26, 2011 at 153, Exhibit 19.  The charges could not have arisen from IAD investigation # 10-1086 because that investigation was not completed until September 1, 2011.  Memorandum to Commanding Officer, Police Board of Inquiry, from Captain Vuotto, September 1, 2011, Exhibit 20.

---

[1] In Plaintiff's deposition, he cannot recall the actual date he spoke with Inspector Bates.  We use the date provided in the Internal Affairs Investigation filed by Ms. Durbin, because he testifies he spoke with Inspector Bates the same day.

33. Upon a review of the evidence from IAD investigation # 04-1524, Captain Martin Derbyshire, the Department advocate for the Police Board of Inquiry, recommended to his superior, Deputy Commissioner John Gaittens, that Commissioner Ramsey be informed about the case, because the Commissioner might decide to take direct action and bypass the PBI hearing.  Exhibit 19 at 154.

34. Commissioner Ramsey took direct action and ordered that Plaintiff be dismissed for conduct unbecoming an officer, neglect of duty and disobedience of orders on October 1, 2010. Commissioner's Direct Action Form, Exhibit 21.

35. On October 7, 2010, Plaintiff was served his non-criminal Gniotek warning by Internal Affairs for IAD investigation # 04-1524, declined to give a statement, and was suspended pending dismissal.  Non-Criminal Gniotek Warnings, Exhibit 22.

36. Effective November 1, 2010, Plaintiff was dismissed from the Department for the second time.  Notice of Dismissal, Exhibit 23.

37. In or around December 13, 2010, Plaintiff settled his 2009 lawsuit, Civil Action No. 09-4696.  Rule 41(b) Order, Exhibit 24.

### C.  Uncontroverted Facts

38. Captain Martin Derbyshire became Department Advocate for the Police Board of Inquiry Unit in November 2009.    He was a lieutenant at that time.  Exhibit 19 at 149.

39. As department advocate, then-Lt. Derbyshire was in charge of processing hearing requests and acting as prosecutor for the Department.  Exhibit 19 at 151.

40. There was a significant backlog of pending disciplinary matters before the PBI in November 2009.  Exhibit 19 at 149.

41. As a new advocate, then-Lt. Derbyshire prioritized cases by their complexity as he tackled the pending hearing backlog.  He testified at the Plaintiff's recent arbitration, "I didn't want to start out with the most difficult cases.  I started picking out the easier ones to get my feet wet in putting on these hearings, understanding the process."  Exhibit 19 at 152, *see also* 160.

42. Captain Derbyshire delayed scheduling Plaintiff's PBI hearing because he considered it complex and wanted to accrue more experience as an advocate before prosecuting it: "Something like Sgt. Cook's case was complicated, and as a new guy at this I had to get my feet wet before I was ready to tackle something like this."  See Exhibit 19 at 155.

43. Plaintiff's scheduled disciplinary hearing for IAD investigation # 04-1524 was cancelled due to scheduling conflicts.  Exhibit 19 at 153.

44. After becoming more familiar with the strength of the IAD investigation into Plaintiff's theft of overtime, then-Lt. Derbyshire recommended that Plaintiff's case, along with other pending discipline for officers accused of similar offenses, be reviewed by Commissioner Ramsey for potential direct action.  Exhibit 19 at 160.

45. Captain Derbyshire harbored no ill will towards Plaintiff, and did not retaliate against Plaintiff in delaying the scheduling of the PBI hearing.  Exhibit 19 at 154; 155.

46. Commissioner Ramsey views dismissal as appropriate discipline for officers with sustained allegations of theft and corruption, and often takes direct action against those officers. See Deposition of Charles Ramsey, Exhibit 25 at 69, 75 - 76.  See also Exhibit 10 at 121.

47. Plaintiff's sustained charges included receiving unearned overtime, which the Commissioner considered theft, and thus appropriate for direct action:

> Q: Why did you feel that it was necessary in Mr. Cook's case to take a Commissioner's Direct Action against him?
>
> A: Because I felt the allegations against him are very, very serious in nature, and rose to the level where I felt it appropriate to take Direct Action.
>
> Q: What do you mean when you say serious in nature? What was serious about his allegations?
>
> A:  He's a thief.
>
> Q: Is that the only allegation that you found serious: That he was a thief?
>
> A: Stealing time is a very serious allegation.  Police officers should not be breaking the law.  Police officers should not be engaging in that kind of conduct. He is a supervisor of police officers, on top of it.

Exhibit 25 at 105 - 106.

48. Commissioner Ramsey was unaware that Plaintiff had filed the 2009 lawsuit against him.  Exhibit 25 at 112.

## III. LEGAL ARGUMENT

### A.    Standard of Review for a Motion for Summary Judgment

Summary judgment must be granted when the pleadings, affidavits and discovery materials produce no "genuine issue as to any material fact" and the moving party is entitled to judgment

as a matter of law. Fed. R. Civ. P. 56(c); *see also Lawrence* v. *National Westminster Bank,* 98 F.3d 61, 65 (3d Cir. 1996). The non-moving party must point to specific evidence of record that demonstrates a genuine issue for trial. *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 324 (1986). Although the Court must resolve all doubts and consider the evidence in the light most favorable to the opposing party, *United States* v. *Diebold, Inc.,* 369 U.S. 654, 655 (1962), a party will not defeat a motion for summary judgment on allegations alone; "rather, the party opposing the motion must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial…Only evidence sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case merits consideration beyond the Rule 56 stage." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. Pa. 2007)(internal quotations and citations omitted.).

"[W]hen the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party," the moving party is entitled to summary judgment in its favor. *Schoonejongen* v. *Curtiss-Wright Corp.,* 143 F.3d 120, 129 (3d Cir. 1998) (citing *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

**B.      First Amendment Retaliation Standard**

In order to establish a violation of his First Amendment rights to speak freely or petition the government, Plaintiff must prove (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation. *See Anderson v. Davila,* 125 F.3d 148, 161 (3d Cir. 1997). Establishing the existence of protected activity is a threshold requirement. *Eichenlaub v. Twp. of Indiana,* 385 F.3d 274, 282 (3d Cir. 2004).

As a public employee, Plaintiff must speak as a private citizen on matters of public concern in order for his speech or petitions to be considered protected activity. *See Connick v. Myers*, 461 U.S. 138 (1983).  However, if speaking out about the perceived wrong is part of a government employee's official duties, that speech is not protected.  "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos,* 547 U.S. 410, 422 (2006).

If Plaintiff can show protected activity, the second prong – evidence of retaliatory action – must be established.  Actions by employers are sufficiently adverse to be considered retaliatory if the actions are "sufficient to deter a person of ordinary firmness from exercising" his or her

rights. *McKee v. Hart,* 436 F.3d 165, 170 (3d Cir. 2006). Plaintiff must meet the third prong –
causation – by proving "either (1) an unusually suggestive temporal proximity between the
protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with
timing to establish a causal link." *Lauren W.*, 480 F.3d at 267 (citing *Krouse v. American
Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913,
920-21 (3d Cir. 1997)). Absent such temporal proximity or antagonism, Plaintiff must show that
from the "evidence gleaned from the record as a whole," the trier of the fact should infer
causation. *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

   C.   **Plaintiff's Complaints to the Police Department and District Attorney's Office
        Were Part of his Duties as a Police Officer and Are Not Protected Activity under
        the First Amendment**

   Plaintiff alleges two types of protected activity – 1) the filing of his 2009 lawsuit against the
City[2] and 2) his reports of "corruption" to people within the Police Department and Deputy
District Attorney Curtis Douglas.[3]   Exhibit 1 at ¶ 32.   These reports of corruption, according to
Plaintiff, take two forms – first, his complaints that the detectives investigating his nephew,
Sharief Durbin, for a shooting, had arrested Sharief erroneously, and, secondly, that those same
detectives were improperly receiving overtime for court appearances they did not need to attend,
which is a misappropriate of funds and violation of Department policy.   Reporting corruption is
explicitly and implicitly part of the official duties of Police Department employees.   Directive
114, Exhibit 26.

   Both the nature of Plaintiff's former position as a police sergeant and the nature of the reports
themselves render his complaints within his official duties, and therefore outside First
Amendment protections.   In *Garcetti v. Ceballos*, a deputy district attorney, Ceballos, wrote a
memo to his supervisors recommending that a prosecution be dropped due to legal
insufficiencies with the underlying search warrant, and, by implication, poor police work on the
part of the warrant affiant.   His supervisors decided to ignore his suggestion, and Ceballos
testified for the defense as to what he believed rendered the warrant insufficient and invalid.   He
was subsequently transferred and passed over for a promotion, and sued his employer for

---

[2] The City does not dispute that Plaintiff's filing of the 2009 lawsuit qualifies as protected activity.
[3] Plaintiff testified at his deposition that he also reported the alleged misconduct to the FBI, however, the FBI has no
record of his complaint.  See Declaration of Special Agent Luke Church, Exhibit 27.  Even by his own admissions,
those alleged reports occurred well after his termination, and cannot therefore support a claim of retaliation. Exhibit
7 at 33.

unlawful retaliation.  547 U.S. at 414 - 15.  The Supreme Court held that Ceballos's memo was not protected speech because he had not spoken out about governmental misconduct as a citizen, but rather as a function of his duties as a district attorney.  *Id.* at 422.

Similarly, the Third Circuit held that two Delaware State Troopers who internally reported unsafe conditions at the firearms training range where they were instructors, and later testified to those conditions for a state auditor's investigation, did not speak as private citizens, but rather in their capacity as law enforcement officers.  *Foraker v. Chaffinch*, 501 F.3d 231 (3d Cir. 2007)(abrogated on other grounds by *Duryea v Guarnieri*, --- S.Ct. ----, 2011 WL 2437008 (U.S.)).  This was true even though, read technically, the officers' specific duties were instructional, and unrelated to facilities maintenance or the official review and regulation of working conditions.  *Id.* at 242 ("the fact that [Plaintiff] may have exceeded the expectations of his formal job description as a firearms instructor does not mean that [addressing environmental concerns] were not within the scope of his duties.").  The "controlling factor" was that Plaintiffs "were *expected*, pursuant to their job duties, to report problems concerning the operations at the range up the chain of command." *Id.* at 241 (emphasis added).

Plaintiff's case is analogous to *Foraker* and controlled by *Garcetti*.  As a sergeant in the Police Department, Plaintiff was not only expected, he was *required* to report any misconduct he discovered within the Department.  This is both explicit Department policy and common sense. Plaintiff was a sworn member of the law enforcement community.  Exhibit 1 at ¶ 14.  By definition, he was tasked with enforcing the law and preventing crime.  He was duty-bound to take action when confronted with what he saw as evidence of misconduct, including possible overtime theft, by other police officers.  Exhibit 26.  It was the very essence of his job, just as halting a retail theft he witnessed on duty would be part of his job.  Moreover, Plaintiff's reports to Capt. Nodiff, Inspector Bates, Inspector Flacco and DDA Curtis Douglas all took the form of internal reports that were predicated upon his status as an active-duty police officer.  The avenues he followed were simply not available to members of the general public.  For example, he did not file the official Complaint Against Police form with Internal Affairs, a public document.  Exhibit 16 at ¶ 18.  Instead he spoke directly to an Internal Affairs supervisor, Inspector Bates, "off in a side room."  Exhibit 7 at 20.  He relied upon his professional relationships to gain hearings for his complaints, and did not resort to public disclosure of his suspicions. While the District Attorney's office is a separate entity from the Police Department,

the two offices work together on prosecutions, and also on reports of police corruption. Exhibit 10 at 107-108; see also, e.g., Exhibit 25 at 106. Further, in pleading his nephew's case and discussing the potential theft of overtime by the investigating detectives, Plaintiff relied on internal documents, such as court notices, warrants and Department arrest reports, that he could access due only to his official capacity. Exhibit 16 at ¶ 8.

Plaintiff's reports of corruption are not protected speech under the First Amendment. As a government employee, Plaintiff has to speak out or petition as a public citizen on a matter of public concern. 461 U.S. 138. His complaints regarding the allegedly mishandled arrest and prosecution of his nephew and unwarranted receipt of overtime by the assigned detectives fell squarely within his duties as police sergeant, and thus do not qualify as speech by a public citizen. *Garcetti*, 547 U.S. at 422. As noted in both *Garcetti* and *Foraker*, state whistleblower acts and similar legislation provide protections for internal grievants, but the First Amendment does not. *See* 501 F.3d at 239, n.5; 547 U.S. at 425. Plaintiff's retaliation claim should be dismissed as a matter of law.

### D. The Cancellation of Plaintiff's Disciplinary Hearing and the Denial of his Request for a Second Extension of Restricted Duty Do Not Constitute Retaliation

Only employment actions so severe they would "deter a person of ordinary firmness from exercising" his or her rights rise to the level of unlawful retaliation. 436 F.3d at 170. Plaintiff's allegations that the denial of a third request for restricted duty and the cancellation of his disciplinary hearing were retaliatory do not meet this standard, so any claims premised on these allegedly retaliatory actions fail as a matter of law.

#### 1. *Denial of Third Restricted Duty Request*

Plaintiff's first request for restricted duty was granted on October 2, 2009. Exhibit 12. He filed his federal lawsuit one week later, on October 10, 2009. Exhibit 1 at ¶ 18. As is typical for the administration of this benefit, he was allotted six months of restricted duty in the DPR unit. Exhibit 13. Those six months ended in April 2009. His application for an extension was granted for a three-month period. Exhibit 12. His 2009 lawsuit was still pending at the time the extension was granted. Exhibit 24. His second request for an extension was denied in mid-July 2010. Exhibit 12. The grant of restricted duty is a benefit made available to officers with medical issues that prevent them from performing their normal, active duties, but who can still

work in a sedentary capacity.  Exhibit 13.  It allows those employees to work and not use their leave time while more fully recuperating, but is not a guaranteed benefit or in any way part of the terms, conditions, or standard benefits of their employment.  Exhibit 13.  Officers not granted restricted duty, or, in Plaintiff's case, successive extensions of restricted duty, simply use their accrued leave time to recuperate enough so that they can return to full, active duty.  Exhibit 13. Plaintiff was granted nine months of fully-paid desk duty so that he did not have to utilize his accrued leave; that grant was completely discretionary, and the final three months were approved after he filed his 2009 lawsuit.  Exhibit 12.  Denial of third request does not rise qualify as retaliation.

Additionally, Plaintiff was placed on administrative duty in early July, due to the pending IAD investigation into his altercation with ADA DeSantis.  Exhibit 18.  He was assigned to the DPR unit.  Id.  This was the unit to which he had been assigned for the duration of his restricted duty.  Exhibit 7 at 15.  So, while his request for a second extension of restricted duty was denied, Plaintiff's work conditions were not changed because of this denial[4]: he was still being paid, he used no accrued leave time, and he continued working in the precise position he had occupied before the denial of his request.  These circumstances would not prevent a person of reasonable firmness from exercising his constitutional rights.

2.  *Cancellation of the PBI Hearing*

Similarly, the cancellation of Plaintiff's PBI hearing in no way rises to the level of an adverse employment action that could be considered retaliatory.   Disciplinary hearings are never guaranteed.  The Police Commissioner can and does take direct action on disciplinary cases where the penalty range is greater than a five-day suspension, and can do so at any time.  Exhibit 10 at 108.  Further, all dismissals are appealable, whether the discipline results from Commissioner's direct action or is the determination of a PBI hearing, and terminated employees are informed of their appeal rights on the Notice of Dismissal. See Exhibit 23.  No fundamental change in the officer's employment rights or options occurs.  Knowing that a hearing is never guaranteed, while rights to appeal are, no person of reasonable firmness would allow a PBI hearing cancellation, without more, to deter him from exercising his constitutional rights.

---

[4] Plaintiff was required to hand in his service weapon once on administrative duty, but this was unrelated to the denial of a second extension of restricted duty. Plaintiff does not allege that his placement on administrative duty was retaliatory.

**E.      Even if Plaintiff Could Establish Protected Activity and Adverse Action, his Claim Fails Because He Cannot Demonstrate Causation**

Plaintiff fails to establish a causal connection between the filing of his 2009 lawsuit and his termination, the cancellation of his disciplinary hearing, or the denial of an extension of restricted duty status.  Plaintiff cannot show unusual temporal proximity between his 2009 lawsuit and the alleged retaliatory acts, or an intervening pattern of antagonism.  Nor does the evidence, on the whole, demand that the factfinder infer a causal relationship between Plaintiff's lawsuit and subsequent dismissal.  Without these showings, Plaintiff cannot establish a *prima facie* case of unlawful retaliation, and his claim fails as a matter of law.  480 F.3d at 267.

Plaintiff filed his 2009 lawsuit against the City on October 10, 2009.  Exhibit 1 at ¶ 18.  He was suspended pending termination a year later.  Exhibit 18.  A gap of twelve months is too great, without more, to establish causation.  *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."); *Williams v. Philadelphia Housing Authority*, 380 F.3d 751, 760 (3d Cir. 2004) (two months between an employee's protected activity and his dismissal does not create a causal link).  Assuming, *arguendo*, that Plaintiff's internal complaints about his nephew's arrest and the assigned detectives' receipt of overtime could be considered protected speech, this activity also fails to occur in close enough proximity to Plaintiff's suspension and termination to establish causation.  Plaintiff first registered those complaints sometime in April 2010, a gap of seven months.  Exhibit 7 at 16.  Even using the date where Plaintiff discussed his concerns with Inspector Bates at Internal Affairs – June 17, 2010 – leaves Plaintiff with a gap of over three months between his complaints with the Department and his termination.  Exhibits 15 and 18.

Just as Plaintiff cannot show an unusual temporal proximity between his speech activities, protected or otherwise, and his termination, neither can he provide evidence of an intervening period of animosity or antagonism.  Plaintiff's complaint is devoid of allegations from October 2009, when he filed his lawsuit, until July 2010, when he was scheduled for a PBI hearing that was subsequently cancelled.  Exhibit 1 at ¶ 23.  In the intervening time, Plaintiff requested, and was granted, an extension of his restricted duty status.  Exhibit 12.  For nine months, Plaintiff reports not a single negative interaction with any members of the Department.

There is no evidence of a period of antagonism between Plaintiff and Defendants following the filing of his lawsuit.  Likewise, there is no evidence of a period of antagonism between Defendants and Plaintiff after his complaints about the detectives assigned to investigate his nephew.  He alleges that the Department's decision to institute discipline for the 2004 - 2007 investigation was retaliatory because it took the Department over a year from the time he was reinstated to actually impose the discipline.  Exhibit 7 at 51.  But other than the disciplinary action itself, Plaintiff presents no evidence of any pattern of antagonism.  At most, he offers the denial of a second extension of restricted duty – which had no practical effect on his duties, pay or position.  While Plaintiff testified at his deposition that the lieutenant who served his disciplinary paperwork to him said, "They've been trying to get you for a long time," this happened, by necessity, *after* the Commissioner's decision to terminate Plaintiff, as the conversation occurred while the disciplinary paperwork was being served, and therefore it cannot provide the basis for a pattern of antagonism. Exhibit 7 at 56.  Additionally, when questioned about who or what the unnamed lieutenant meant by that statement, Plaintiff indicated, not that the alleged retaliation had anything to do with his lawsuit or recent complaints, but rather related to complaints he made about his son's arrest in 1997.[5]  Exhibit 7 at 57.  There is no evidence that any of the Defendants had any knowledge of this incident; Commissioner Ramsey was a Deputy Superintendent for the Chicago Police Department at the time.  Exhibit 25 at 7.

Similarly, Plaintiff testified that two fellow police officers, now retired, indicated he was a target for retaliation by the Department.  Exhibit 7 at 58 - 59.  However, Plaintiff failed to provide any details, timing or context for these remarks in response to Defendants' interrogatories.  Plaintiff also failed to include these officers in answer to Defendants' interrogatory requesting that he, "[s]et forth the identity of all individuals, not previously identified, who may have discoverable information regarding the subject matter of this litigation or that you may use to support your claims.  For each such individual, set forth a detailed factual description of the information or knowledge possessed."  Numerous individuals were named that had not previously appeared in Plaintiff's complaint, deposition or other discovery.  See

---

[5] Q:      Did he [the lieutenant] elaborate on who "They" were?
Plaintiff: No, he just said, "They have been trying to get you for a long time."
Q:      What did you take that to mean?
Plaintiff: When I got my son out of jail, Internal Affairs didn't do anything with the investigation.  That is one of the reasons I went down to the FBI.  It's not Shariff [sic].  They did the same thing to my son, and it goes on.

Plaintiff's Response to Defendants' Interrogatories, at #4 and #10, Exhibit 28.  Without more factual context, two stray remarks allegedly made by officers completely outside Plaintiff's chain-of-command do not establish a pattern of antagonism by Defendants.

### F.   Plaintiff Fails to Establish that Retaliation Can Be Inferred from the Totality of the Evidence

Absent temporal proximity or a pattern of antagonism, Plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. *Lauren W.*, 430 F.3d at 267 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).  Such an inference cannot be drawn from the evidence in the instant case.

Plaintiff presents no direct evidence that anyone in the Department sought to retaliate against him for either filing his 2009 lawsuit or alleging that the detectives assigned to his nephew's arrest and prosecution were engaged in misconduct.  His sole contention is that it strains credulity to believe that the Department would pursue disciplinary charges from sustained allegations of, *inter alia*, overtime theft and falsification of police reports upon his reinstatement two years later, and that it is profoundly suspicious that it took the Department over a year to ultimately take action on those charges.  Exhibit 1 at ¶26 and ¶37.

#### 1.   *Commissioner Ramsey terminated Plaintiff for theft, not in retaliation for any speech.*

To the contrary, the evidence on the whole establishes that Plaintiff was, in fact, terminated for theft, and not for any protected or unprotected activity.  Commissioner Ramsey, the ultimate arbiter of dismissal-level discipline, did not even know he was a defendant in Plaintiff's earlier lawsuit, let alone retaliate against Plaintiff.  Exhibit 25 at 112.  There is no evidence in the record that the Commissioner behaved inconsistently or disciplined Plaintiff more harshly than other officers found to have falsified their time sheets, lied, stolen or otherwise displayed questionable integrity.  Both Commissioner Ramsey and Deputy Commissioner Gaittens testified at their depositions that Commissioner Ramsey's stance was to simply not tolerate such offenses. Exhibit 25 at 75 - 76 and Exhibit 10 at 119, 111 - 112.  Both Ramsey and Gaittens also testified that priorities differ between Commissioners.  Exhibit 25 at 73 and Exhibit 10 at 114, 116.  The fact that Commissioner Ramsey saw the 2004 overtime theft investigation as appropriate for direct action and dismissal while former Commissioner Johnson may not have does not give rise to an inference of retaliatory motive on Commissioner Ramsey's part.

2.   *There was nothing unusual about the length of time it took to process Plaintiff's old, pending disciplinary charges, nor was the cancellation of Plaintiff's PBI hearing unusual or retaliatory.*

Commissioner Ramsey, Deputy Commissioner Gaittens, and Deputy Commissioner Bethel had no part in the delay between Plaintiff's reinstatement in September 2009 and the time his pending discipline took to navigate its way through the PBI Unit and back to the Commissioner for review.  Captain Derbyshire testified at Plaintiff's arbitration that he, and he alone, made the decision to hold off on immediately prosecuting the case, due to his own inexperience at the time.  See Exhibit 19 at 154.  Capt. Derbyshire further testified that he attempted to schedule Plaintiff's hearing at least once and was unsuccessful, and that, finally, after reviewing the video surveillance of Plaintiff and recognizing the strength of the case, decided to forward Plaintiff's case, along with others' who had "played fast and lose" with their time sheets, on to the Commissioner for possible direct action.  Exhibit 19 at 162.  There is no evidence in the record that contradicts or even undermines this version of events.  Captain Derbyshire denies any retaliatory motive in delaying the scheduling of a PBI hearing.  The record supports that assertion:  Plaintiff was notified of the disciplinary charges stemming from IAD investigation # 04-1524 in March of 2007, and yet had not had his PBI hearing for those charges by the time of his DUI arrest and termination in September 2007, six months later.  Exhibits 6 and 8.  Plaintiff does not assert that there was anything untoward in that delay.

3.   *Plaintiff's actions and record objectively justified dismissal.*

Finally, Commissioner Ramsey's decision to dismiss Plaintiff is objectively reasonable. Whether or not one credits the testimony regarding this Commissioner's policy to take direct action on cases of officer dishonesty, the facts are that, at the time Commissioner Ramsey decided Plaintiff's charges warranted termination:

> A) Plaintiff had been previously fired for drunk driving;
>
> B) A three-year investigation, including video surveillance, concluded that Plaintiff inaccurately recorded his hours to get overtime he had not earned – including falsely recording that he had been part of teams serving warrants, when in fact interviews of his fellow officers revealed he was not present; and

C) A third IAD investigation of allegations that Plaintiff had, at minimum, verbally assaulted an Assistant District Attorney, and quite possibly engaged in witness intimidation on behalf of his nephew, was pending.

Even discounting the third IAD investigation because the charges had not yet been sustained, a previous DUI combined with thoroughly-supported charges of fraud and theft are more than enough to justify Commissioner Ramsey's decision. Moreover, there is no evidence on the record of pretext or animus on the part of the Commissioner. The first time Commissioner Ramsey had ever met Plaintiff was at the arbitration challenging this second dismissal, which happened in October 2011. Exhibit 25 at 22.

## IV. Conclusion

Plaintiff cannot establish any element of a *prima facie* case of unlawful First Amendment retaliation. His complaints of police misconduct are within his expected official duties and are therefore outside the protections of the First Amendment. Even if those complaints qualified as protected activity, Plaintiff cannot establish a causal connection between that speech and any adverse employment actions. Neither can Plaintiff establish a causal connection between his 2009 lawsuit and any adverse employment actions. There is no unusually suggestive temporal proximity between his termination – or any of his alleged, legally insufficient, adverse actions – and the alleged protected activities. There is no evidence whatsoever of any intervening pattern of antagonism or animosity on the part of the Department, or the individual Defendants, directed towards the Plaintiff. Finally, the evidence as a whole amply supports the Commissioner's decision to terminate Plaintiff, without providing any indications that the time it took to reach that decision was at all untoward, or in any way the product of animus from any member of the Police Department. Plaintiff cannot support any inference of retaliation, and does not supply any evidence that Defendants' actions were pretextual in any way. His unsupported allegations and the record at hand do not provide evidence sufficient to convince a reasonable factfinder to find all elements of a *prima facie*, as is required to withstand a motion for summary judgment. *Lauren W.*, 480 F.3d at 266. Plaintiff's case should be dismissed with prejudice, and summary judgment granted in favor of all Defendants.

{Signatures on following page}

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT

SHELLEY R. SMITH, City Solicitor

ELIZABETH MATTIONI, Chair, Litigation Group
SUZANNE REILLY, Chief Deputy City Solicitor

DATE: November 30, 2011           */s/ Tracy Tripp*_____
Tracy Tripp, Assistant City Solicitor
Labor & Employment Unit
1515 Arch Street, 16th Floor
Philadelphia, PA 19102-1595

**CERTIFICATE OF SERVICE**

I, TRACY TRIPP, ESQUIRE, hereby certify that I caused a true and correct copy of Defendants' Motion for Summary Judgment, to be filed electronically and served upon the following counsel by electronic service via the court's ECF system:

> Alexis I. Zafferes, Esq.
> Law Office of Brian M. Puricelli
> 691 Washington Crossing Road
> Newtown, PA 18940

DATE: November 30, 2011                    BY:    */s/ Tracy Tripp*_____
                                                            TRACY TRIPP
                                                            Assistant City Solicitor